* * * * * * * * * * *
The Full Commission has reviewed the prior Opinion and Award based upon the record of the proceedings before Deputy Commissioner Holmes and the briefs and arguments before the Full Commission. The appealing parties have not shown good grounds to reconsider the evidence, receive further evidence or rehear the parties or their representatives. The Full Commission AFFIRMS with some modifications the Opinion and Award of the Deputy Commissioner.
 * * * * * * * * * * *
The Full Commission finds as fact and concludes as matter of law the following, which were entered into by the parties at the hearing before the Deputy Commissioner as:
 STIPULATIONS
1. July 12, 2002 is the date of the admittedly compensable injury in this claim.
2. At all relevant times, the parties were subject to and bound by the North Carolina Workers' Compensation Act.
3. At all relevant times, an employer-employee relationship existed between plaintiff and defendant-employer, who regularly employed three or more employees.
4. American Protection Insurance Company is the carrier on the risk and Sedgwick Claims Management is the administrator.
5. Since August 5, 2002 and pursuant to a Form 60, defendants have paid $550.36 per week to plaintiff for temporary total disability, based on an assumed average weekly wage of $825.55 during the 52 weeks preceding July 12, 2000.
6. During the relevant 52-week period, the 40l(k) plan and employer matching contributions were governed by the 1999 Agreement Between U.S. Airways, Inc. and the International Association of Machinists and Aerospace Workers.
7. Without objection, the IME report of Dr. Neal Taub was received into evidence by the Full Commission.
8. The issues before the Full Commission are whether plaintiff's average weekly wage includes defendant-employer's contributions to plaintiff's pension fund and 401(k) fund and whether plaintiff's medical care should be transferred from Dr. Roger Hershline to Dr. Douglas Pritchard.
 * * * * * * * * * * *
Based upon the competent evidence of record herein, the Full Commission makes the following:
 FINDINGS OF FACT
1. On July 12, 2000, plaintiff was injured while working for defendant-employer as a fleet service worker. Plaintiff injured his back while attempting to lift a heavy piece of luggage off a baggage belt.
2. Plaintiff was initially sent to WorkWell for treatment and was examined by Dr. Roger Hershline. Since July 12, 2000, plaintiff has had a disc laminectomy and a fusion with hardware implantation. Both surgeries were performed by Dr. Bernard at Carolinas Medical Center. Since April 19, 2004, Dr. Douglas Pritchard, a pain management doctor, has treated plaintiff. In contrast to Dr. Hershline, Dr. Pritchard has performed nerve root injections and radiofrequency nerve obliteration procedures and has prescribed medications and monitored plaintiff's progress in a way that has provided relief to plaintiff for his injury-related pain. Plaintiff has requested that Dr. Pritchard be authorized as his treating physician.
3. At the time of the Deputy Commissioner's hearing, plaintiff continued to be out of work on temporary total disability as a result of his July 12, 2000 injury.
4. Defendants properly filed a Form 22 dated August 2, 2000, which showed that plaintiff's average weekly wage was $825.55, which yields a compensation rate of $550.36.
5. As a fleet service worker, plaintiff's employment was governed by the 1999 Agreement Between U.S. Airways, Inc. and the International Association of Machinists and Aerospace Workers (hereinafter the "Agreement.") The Agreement states that covered employees participate in the U.S. Airways Defined Contribution Retirement Program (DCRP), which is comprised of the U.S. Airways, Inc. Employee Savings Plan and the U.S. Airways, Inc. Employee Pension Plan.
6. Defendant-employer contributed approximately $1,798.33 to plaintiff's pension fund and $899.17 to plaintiff's 40l(k) plan during the 52 weeks immediately preceding his injury on July 12, 2000. Plaintiff argues to the Commission that his average weekly wage should be increased by $51.87, which amount is the total contributions divided by 52.
7. Thomas Antonielli, Director of Retirement Plans for defendant-employer, testified extensively about defendant-employer's DCRP. Mr. Antonielli testified that the DCRP consisted of two parts, the Employee Savings Plan and the Employee Pension Plan, and that Fidelity Investment Services (Fidelity) was the record keeper for both plans. Both the Employee Savings Plan and the Employee Pension Plan offered a mix of approximately 11 to 14 mutual funds, stock funds, and bond funds in which employees could choose to invest their contributions. The funds were chosen by defendant-employer based upon information provided by investment companies. Employees were not allowed to invest in other funds. Although the investment funds available to employees were the same for both the Employee Savings Plan and the Employee Pension Plan, Fidelity maintained the accounts separately. Also, employees were not permitted to invest in the individual stocks of companies other than defendant-employer and they were not allowed to choose from alternative investment vehicles, such as real estate or commodities futures.
8. Mr. Antonielli explained that the Employee Savings Plan is a 40l(k) plan that allows employees to defer a certain percentage of their eligible compensation for their retirement. In addition to an individual employee contribution to the Employee Savings Plan, defendant-employer matched 50% of the first 4% the employee contributed to the plan, with a maximum match of 2% of the employee's eligible compensation. Employees were not required to participate in the Employee Savings Plan; however, if employees chose not to participate in the plan, they would not be entitled to the company match, as the match is not required by law. This plan is governed by Article 401(k) of the Internal Revenue Code of the United States and all other applicable statutes therein.
9. Defendant-employer also provided employees with an Employee Pension Plan. In this plan, defendant-employer contributed a certain percentage of an employee's eligible compensation based upon the age of the employee. The Employee Pension Plan was a money-purchase plan and, unlike the Employee Savings Plan, did not consist of employee contributions and was generated solely through employer contributions. All eligible employees were enrolled in the Employee Pension Plan at the start of the first quarter immediately following 90 days of continuous employment. This plan had no opt-out provisions; if employees were in a workgroup that was eligible for the plan, they were enrolled in the plan regardless of whether they wanted to be or not. Fleet service workers were eligible for the plan.
10. There was a period of 30 days between a participant's termination date and when employees could actually gain access to the funds in their retirement account. This period allowed defendant-employer's payroll department time to make any necessary adjustments before the employee's account was withdrawn. Also, if an employee terminated employment before the age of 55 and chose to cash out his retirement account, he had 20% of the value withheld for taxes and was subject to an additional 10% early withdrawal penalty.
11. Although it would be possible to add up all of the various contributions and deferrals made into an employee's retirement fund over the course of his employment, the Commission finds that estimating how much an employee could actually withdraw at any given time would be virtually impossible because the amount could be higher or lower based upon the employee's investment gains and losses. In addition, any amount plaintiff has in his retirement account is subject to applicable state and federal taxes, as well as a 10% early withdrawal penalty if he cashed out prior to the age of 55, further complicating the quantification of his actual benefit.
 * * * * * * * * * * *
Based upon the foregoing stipulations and findings of fact, the Full Commission makes the following:
 CONCLUSIONS OF LAW
1. N.C. Gen. Stat. § 97-2(5) defines average weekly wages as "the earnings of the injured employee in the employment in which he was working at the time of the injury during the period of 52 weeks immediately preceding the date of the injury. . . ." The statute further provides that allowances of any character made to an employee in lieu of wages and which are a specified part of the wage contract are also deemed to be earnings. Id. Here, there is no evidence of record and the parties did not argue that the contributions to the pension and 401(k) plans were made "in lieu of wages."
2. Therefore, if the retirement contributions are to be added to the calculation of plaintiff's average weekly wage, they must constitute "earnings." N.C. Gen. Stat. § 97-2(5). InMorrison-Knudsen Construction Co. v. U.S. Dep't of Labor,461 U.S. 624, 103 S.Ct. 2045 (1983), the United States Supreme Court held that employer contributions to union trust funds for health and welfare, pensions, and training are not "wages" for purposed of computing workers' compensation benefits under the Longshoremen's and Harbor Workers' Compensation Act. "The Court reasoned that wage means `the money rate at which service is recompensed under the contract of hiring' and not `fringe benefits that cannot be converted into a cash equivalent.'" Kirkv. State of N.C. Dept. of Correction, 121 N.C. App. 129, 136,465 S.E.2d 301, 306 (1995), citing Morrison-Knudsen ConstructionCo. v. U.S. Dep't of Labor, supra. In Kirk v. State of N.C.Dept. of Correction, supra, the North Carolina Court of Appeals followed the reasoning in Morrison-Knudsen and held that the employer's contribution to an employee's health insurance plan should not be included in the calculation of weekly earnings. In the case at bar, defendant-employer's contributions to plaintiff's retirement accounts did not constitute earnings, but rather were a fringe benefit of his employment with defendant-employer that should not be included in the calculation of his average weekly wage. See, Morrison-Knudsen ConstructionCo. v. U.S. Dep't of Labor, supra.
3. Based upon the foregoing, plaintiff's average weekly wage is $825.55, yielding a compensation rate of $550.36 per week. N.C. Gen. Stat. § 97-2(5).
4. Plaintiff is entitled to payment by defendants of medical expenses causally related to the compensable injury by accident and is entitled to have Dr. Pritchard designated as plaintiff's treating physician. N.C. Gen. Stat. § 97-25.
 * * * * * * * * * * *
Based upon the foregoing stipulations, findings of fact, and conclusions of law, the Full Commission enters the following:
 AWARD
1. Plaintiff's correct average weekly wage is $825.55, which yields a compensation rate of $550.36 per week.
2. Dr. Pritchard is hereby approved as plaintiff's treating physician.
3. Defendants shall pay the costs of this action.
This 13th day of July 2006.
 S/______________________ LAURA KRANIFELD MAVRETIC COMMISSIONER
CONCURRING:
 S/____________________ BERNADINE S. BALLANCE COMMISSIONER
 S/_____________ PAMELA T. YOUNG COMMISSIONER